IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **EDDIE BURNS,** § | |
| Plaintiff, § | |
| § | |
| vs. § | **CIVIL ACTION NO. 4:25-CV-0719** |
| § | |
| **CITY OF FOREST HILL,** § | |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Eddie Burns, hereinafter called Plaintiff, complaining of and about City of Forest Hill, hereinafter called Defendant, and for cause of action shows the Court the following:

**PARTIES AND SERVICE**

1. Plaintiff Eddie Burns resides in Mansfield, Tarrant County, Texas.

2. Defendant City of Forest Hill is a local city municipality located in Tarrant County, Texas. Defendant may be served by serving the City of Forest Hill, City Secretary, Amy Anderson, at 3219 California Parkway, Forest Hill, Texas 76119 or wherever she may be found. *Issuance of a summons is hereby requested.*

**JURISDICTION & VENUE**

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, 1446 and Section 1983 Claims. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

4. This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5. This is an employment action brought under the Title VII Civil Rights Act (Title VII), Age Discrimination in Employment Act (ADEA), Chapter 21 of the Texas Labor Code, all of which prohibit employment discrimination based on age, race, color and forbid retaliation.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7. At all times relevant to this lawsuit, City of Forest Hill was Plaintiff's employer.

8. Plaintiff is a 63-year-old African American male.

9. Plaintiff's date of birth is June 20, 1960.

10. Defendant employed Plaintiff as a Police Chief with the City's Police Department from September 7, 2021, up until Defendant wrongfully terminated him on or about February 17, 2024.

11. During his employment with Defendant, Plaintiff was a qualified, loyal, and dedicated employee. He was knowledgeable and experienced in his field.

12. Like any government and Police Chief position, there were people who did not like the positive changes and management style of Plaintiff but nonetheless Plaintiff knew that with change comes push-back and his goal was to improve the City of Forest Hill Police Department

and to protect and serve the citizens of Forest Hill.

13. Plaintiff immediately inherited a negative culture and wanted to make changes for the better of Forest Hill.

14. In December 2022, Officer Naqirria Williams and Officer Liset Lewis filed a grievance. Officer Williams said she was a victim of discrimination, alienation, racism, harassment, release of medical information and hostile work environment within the workplace. Officer Williams submitted grievance to the Interim Human Resources Director, Amy Anderson (City Secretary).

15. A day later Venus Wehle ("Wehle"), City Manager, sent Plaintiff an email notifying Plaintiff that two of Plaintiff's employees had filed formal grievances. Plaintiff responded to City Manager asking for a copy of the formal complaints Wehle responded "Chief – I won't be able to provide the to you as they are now being investigated by the city attorney."

16. Approximately 10 days later Wehle sent Plaintiff an email "Chief- After conversing with Victoria Thomas (City Attorney), she has suggested that you review the attached grievances and proceed with your internal investigation. Victoria has also provided a follow-up document (attached word document) that will help you with her assessment of the situation and next steps." In handling things this way Wehle violated the Forest Hill Police Department Grievance Policy/General Orders regarding handling employee grievances. Wehle completely mishandled the initial grievance protocol.

17. At the end of January 2023, Plaintiff received an email from Wehle requesting that Everman Police Chief Craig Spencer conduct an internal investigation of the grievances filed by Officer Williams and Officer Lewis. Chief Spencer received the 10-page document received from HR."

18. During the end of January 2023, Plaintiff sent the city attorney several documents of Plaintiff's efforts to change the culture of the Forest Hill Police department including 90-day assessment, SWOT analysis, workshops for organizational success, reminders of behavior for all personnel.

19. In February 2023, Plaintiff received an email from Interim City Manager Venus Wehle that she was upset that there is a "Police Advisory Board." Wehle said she had never heard of it before and was a bit blind-sided by the conversation about it.

20. On September 2023, Wehle became upset because there was a "TCOLE Advisory Committee" and she demanded Plaintiff submit documentation of all minutes, advertisements for the meetings, and all documents. Wehle was upset that this was going on but this committee in question had existed for years before Plaintiff was there.

21. In March 2023, Officer Williams tried to meet with Plaintiff to discuss her grievance and EEOC claims. Plaintiff immediately notified Wehle about the interactions with Officer Williams. While Williams did file an EEOC, Plaintiff was still Williams' supervisor and required to have conversations with Willaims regarding work.

22. Wehle became upset and sent off an email saying that no one was to talk with Williams and those would be considered "unauthorized discussions" and not allowed, according to Wehle.

23. As such, Wehle, in March 2023, gave Plaintiff an unjustified written reprimand for having these "unauthorized" meetings or discussion with Officer Williams. But the write-up was unjustified as Plaintiff did not discuss anything regarding the EEOC or offer any sort of advice. As Officer Williams' supervisor, he still had to meet with Officer Williams.

24. In May 2023, Everman Police Chief, Craig Spencer, sent a letter to the City

Manager, Venus Wehle, with recommendations from the internal investigation involving the complaints by Officer Williams and Officer Lewis that had been filed earlier.

25. Part of the findings required that three officers violated SOP/SOG's and were put on a Performance Improvement Plan (PIP).

26. In August 2023, Citizens Charmaine Pruitt and Willie Glaster, addressed the City Council on the police station, non-functioning bathrooms, and the general physical state of the police facility, specifically citing plumbing problems, foundations problems and roof leaks.

27. It was brought to Plaintiff's attention that Mayor Boardingham ("Boardingham") and the City Manager were trying to find ways to hire more police officers. Plaintiff, as Police Chief, should have been involved and asked how to complete this but instead Wehle and Boardingham, suspended the police entrance exam, which Plaintiff opposed but had no say in the matter.

28. This was another example of interference of the day to day operations of the police department and impeding Plaintiff's ability to lead the City of Forest Hill police department.

29. In an attempt to get rid of citizens like Charmain Pruitt and Willie Glastner, Boardingham and Wehle, told Plaintiff that he was to get rid of Citizens on Patrol and Citizens Police Academy.

30. In September 30, 2023, a meeting was held with Wehle, Boardingham, Captain Spraberry, Plaintiff, and citizens to discuss the Citizens on Patrol.

31. In September 2023, after that meeting, Boardingham called a meeting with Plaintiff, and Wehle to discuss the new ordinance which would push out the citizens of Citizens on Patrol.

32. At this meeting, Plaintiff also aired his grievances against Wehle, which included

the fact that she does not keep the police department informed, she does not respond to emails, she does not notify the police when she goes out of town, and she falsely accuses Plaintiff of things that are not accurate.

33. At the October 2023 City Council meeting, a citizen asked Plaintiff what he thought about the new ordinance for Citizens on Patrol. Plaintiff expressed his concerns and said he did not support the ordinance.

34. After this meeting, Plaintiff was targeted for openly disagreeing and written up for three different pre-textual reasons.

35. While on FMLA leave, Plaintiff filed a TWC/EEOC Charge against the City of Forest Hill on around January 30, 2023.

36. Approximately two weeks later February 17, 2024, the City of Forest Hill Manager, Venus Wehle, sent a courier to deliver Plaintiff's termination letter directly to Plaintiff's house.

37. The timing of this termination after the City of Forest Hill was notified makes it clear that the Defendant was retaliating against Plaintiff for filing a TWC/EEOC Charge of Discrimination against them.

38. The termination letter is filled with false allegations, conclusory statements, and pre-text to appear as though they had legitimate reason but the timing of it all suggests that it was simply retaliation against the Plaintiff for filing his previous TWC/EEOC Charge while he was on FMLA leave.

## TITLE VII – RACE & COLOR DISCRIMINATION

39. Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as fully set forth herein.

40. Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to

discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

41. To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

42. With respect to the first requirement, Plaintiff is an African American male and is therefore a member of a protected class.

43. Plaintiff was qualified for his position based on: (i) his training and experience as a supervisor and Police Chief, (ii) his past working with Defendant, and (iii) holding all the required licenses to be the Police Chief.

44. However, despite the foregoing qualifications, Plaintiff received adverse employment action in the form of being subjected to a hostile work environment and ultimately was wrongly terminated.

45. Defendant discriminated against Plaintiff in connection with the terms, conditions, and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000.

46. Defendant classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e.

47. Plaintiff alleges that Defendant discriminated against Plaintiff based on race and color with malice or with reckless indifference to the protected rights of Plaintiff.

## TITLE VII - RETALIATION CLAIMS

48. Plaintiff incorporates all preceding paragraphs.

49. Title VII of the Civil Rights Act of 1964 (the "Act") prohibits retaliation against an employee who reports discrimination based on disability. It is unlawful to retaliate against applicants or employees for communicating with a supervisor or manager about employment discrimination, including harassment. Retaliation can take the form of a reprimand; giving a performance evaluation that is lower than it should be; engaging in physical or verbal abuse; increased scrutiny; and making the employee's work more difficult. A plaintiff establishes a claim for retaliation when [s]he, "engaged in an activity protected by Title VII; 2) was subjected to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action." Adams v. Vaughn, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting Wright v. Chevron Philips Chem. Co., 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); Valdarez v. Lubbock Cty. Hosp. Dist., 611

Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

50. Title VII states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

51. *McDonnell Douglas* provides the burden-shifting framework for claims of unlawful retaliation under the ADA. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998). It says that "to show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348−49 (5th Cir. 2019) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)); *see also Credeur*, 860 F.3d at 797 (same). If "the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Nall*, 917 F.3d 335, 349 (5th Cir. 2019) (quoting Seaman, 179 F.3d at 301). If the defendant does so, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*.

52. Here, Plaintiff engaged in activity protected by Title VII when he complained about race, color, and age discrimination to the EEOC and filed a formal Charge of discrimination. Plaintiff filed a complaint with Human Resources and ultimately was targeted and retaliated against because of him bringing to light the discrimination he was suffering.

53. Plaintiff was subsequently terminated within a few days of Defendant finding out that Plaintiff had filed a claim of age, race, and color discrimination.

54. All of these efforts to intimidate and harass Plaintiff ultimately resulted in him being terminated. Had he not filed the TWC/EEOC Charge Plaintiff would still have been employed by Defendant.

55. Plaintiff suffered damages for which Plaintiff herein sues.

## CHAPTER 21 TEXAS LABOR CODE – HOSTILE WORK ENVIRONMENT

56. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

57. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

58. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

59. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

60. Plaintiff was subject to a hostile workplace as a result of the severe and pervasive bullying, ridicule, conspiring and harassment, including by Wehle and Boardingham who were trying to get rid of Plaintiff because he would not blindly follow them and because he was trying to exercise his personal judgment.

61. Defendants had actual knowledge of the hostile workplace Plaintiff endured when he made repeated comments to management. Defendants failed to properly investigate or otherwise resolve this hostile work environment. The actions by Defendants and its employees, or lack thereof, created an abusive working environment that ultimately resulted in Plaintiff's wrongful termination.

## ADEA - AGE DICRIMINATION

62. Plaintiff incorporates all preceding paragraphs herein.

63. The Age Discrimination in Employment Act of 1967., 81 Stat. 602, states: "it shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of age."

64. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of his age. At all material times Plaintiff was 40 years of age or older.

65. Defendant discriminated against Plaintiff in connection with the compensation,

terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's age in violation of the Age Discrimination in Employment Act.

66.     Plaintiff was ultimately pushed out because he was not one of the new "younger" employees who would just agree with Wehle and other staff members. Instead, he used his professional experience to try and do his job better. But because he was older and more experienced, Defendant pushed him out.

67.     The unlawful employment practices of Defendant, specifically undue reprimands, harassment, threat of job loss, creation of a hostile work environment and ultimately blacklisting Plaintiff by labeling him as incompetent and a poor employee, had a disparate and adverse impact on older workers, including Plaintiff.  Such employment practices were not based on any reasonable factor other than age.

## RESPONDEAT SUPERIOR AND RATIFICATION

68.     Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

69.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

> a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c. All reasonable and necessary costs incurred in pursuit of this suit;

    d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    e. Inconvenience;

    f. Interest;

    g. Mental anguish in the past;

    h. Mental anguish in the future; and

    i. Loss of benefits.

## SPECIFIC RELIEF

70. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a. Neutral job reference; and

    b. An injunction against Defendants prohibiting discriminatory employment practices on the basis of disability and other protected categories.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Eddie Burns, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

## PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**